FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

2013 SEP 11  A 10: 56

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

| | | |
|---|---|---|
| LAURIE WILSON and DAVID WILSON, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 3:13cv622 |
| Plaintiffs, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| SUNTRUST MORTGAGE, INC. and SUNTRUST BANKS, INC., | ) ) ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Laurie and David Wilson (the "Wilsons" or "Plaintiffs") bring this class action complaint against Defendants SunTrust Mortgage, Inc. ("SunTrust Mortgage") and SunTrust Banks, Inc. ("SunTrust Banks") (collectively "Defendants" or "SunTrust"), on behalf of themselves and all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### I. NATURE OF THE ACTION

1.      In the wake of the recent economic crisis and real estate slump, thousands of homeowners and mortgage holders across the United States have sought to modify their mortgages. This unprecedented surge in demand has exposed a broad swath of improper banking and loan documentation practices, which has culminated in many class action lawsuits against large banks and mortgagees across the country.

2.      This lawsuit specifically targets SunTrust's loan modification practices, which have harmed thousands of consumers nationwide. When SunTrust mortgagors enter into the

"trial period" portion of the loan modification process, they are directed by SunTrust to make payments for a designated period of consecutive months at a reduced (modified) rate, ostensibly to qualify for permanent modification. After consumers *follow* those directions during the trial period, however, SunTrust imposes substantial (but baseless) penalty fees and late fees, and then commences foreclosure proceedings against consumers.

3.      Importantly, this lawsuit does *not* seek damages for SunTrust's failure to grant loan modifications pursuant to the terms of its consumer modification contracts. Rather, this lawsuit seeks damages on behalf of a nationwide class for improper fees assessed by SunTrust, and foreclosure proceedings commenced by SunTrust, that resulted directly from the customer's *compliance* with those contracts.

4.      Accordingly, in this action, Plaintiffs assert claims on their own behalf and on behalf of the other members of the Classes defined below.

## II.   JURISDICTION AND VENUE

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs allege in Count III of this Complaint that Defendants have violated and continue to violate portions of the Truth in Lending Act, a federal law, including violations of 15 U.S.C. § 1639f(a). Because the remaining state law claims arise from a common nucleus of facts, this Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.

6.      This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of States other than SunTrust Mortgage and SunTrust Bank's States of citizenship.

7.      This Court has personal jurisdiction over SunTrust Mortgage and SunTrust Banks under the Virginia long-arm statute, Va. Code Ann. § 8.01-328.1, because this action arises from

SunTrust's: (1) transaction of business in Virginia; and (2) causing of a tortious injury through its acts and omissions in Virginia.

8.     This Court also has personal jurisdiction over SunTrust Mortgage because it is domiciled in the Commonwealth of Virginia and thus subject to general jurisdiction therein.

9.     Venue is proper in this District pursuant to 28 U.S.C. 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, and Defendants regularly transact business in this District and are subject to personal jurisdiction in this District.

### III.   PARTIES

*Plaintiffs*

10.     Plaintiff David Wilson is a citizen of the State of South Carolina. At all relevant times, David was a resident and citizen of the State of South Carolina, and was subjected to SunTrust's misleading, deceptive and/or fraudulent practices, and sustained damages resulting from the conduct alleged herein.

11.     Plaintiff Laurie Wilson is a citizen of the State of South Carolina. At all relevant times, Laurie was a resident and citizen of the State of South Carolina, and was subjected to SunTrust's misleading, deceptive and/or fraudulent practices, and sustained damages resulting from the conduct alleged herein.

*Defendants*

12.     Defendant SunTrust Mortgage, Inc. is a mortgage bank and home mortgage loan servicer. SunTrust Mortgage is a Virginia corporation headquartered and with its principal place of business in Richmond, Virginia. SunTrust Mortgage is a citizen of the Commonwealth of Virginia.

13.     SunTrust Mortgage is a wholly-owned subsidiary of SunTrust Banks, Inc., a Georgia corporation headquartered and with its principal place of business in Atlanta, Georgia. SunTrust Banks is a citizen of the State of Georgia.

14.     Currently, SunTrust Mortgage originates loans through 208 locations, maintains correspondent and broker relationships in 49 states, and services loans in 50 states and the District of Columbia. SunTrust Mortgage has serviced over one million home mortgage loans nationwide, including loans in the Commonwealth of Virginia. SunTrust Banks reported profit of $84 million for the third quarter of 2010.[1]

15.     As of December 31, 2009, SunTrust Banks had total assets of $174 billion and total deposits of $116 billion. On information and belief, SunTrust Banks directed, controlled, formulated, and/or participated in Defendant SunTrust Mortgage's loan servicing activities and is jointly and severally liable for SunTrust Mortgage's unlawful activity.

## IV.  FACTUAL BACKGROUND

*Troubled Asset Relief Program ("TARP")*

16.     On October 3, 2008, the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765 (codified, as amended, at 12 U.S.C. 5201-5261, 31 U.S.C. 1105, and scattered sections of 26 U.S.C.) (the "EESA"), was enacted into law.

17.     Developed in response to the financial crisis facing the nation, EESA provided immediate authority and facilities that the United States Department of the Treasury could use to restore liquidity and stability to the financial system.

18.     To this end, EESA authorized the Secretary of the Treasury to establish the Troubled Asset Relief Program ("TARP") to "purchase, and to make and fund commitments to

---

[1] News Release, SunTrust Banks, Inc., Higher Revenues and Lower Credit Costs Drive Earnings Per Share of $0.17 and Net Income of $84 Million (Oct. 21, 2010).

purchase, troubled assets from any financial institution, on such terms and conditions as are determined by the Secretary, and in accordance with this Act and policies and procedures developed and published by the Secretary." Pub. L. No. 110-343, § 101(a)(1), 122 Stat. 3765, 3767(2008) (codified at 12 U.S.C. § 5211).

19.    As part of the TARP program, the Department of the Treasury introduced the Home Affordable Modification Program ("HAMP"), which established guidelines for mortgage servicers to adopt to modify loans for homeowners in financial need.

*The HAMP Program*

20.    HAMP is funded by the federal government primarily with TARP funds. The Treasury Department has allocated at least $75 billion to HAMP, of which at least $50 billion is TARP money.

21.    Although participation in the HAMP program is voluntary for services of non-Government Sponsored Enterprises (GSE), all servicers of individual loans owned or guaranteed by Fannie Mae and Freddie Mac are required to participate.

22.    Under HAMP, the federal government incentivizes participating servicers to enter into agreements with struggling homeowners that will make adjustments to existing mortgage obligations in order to make the monthly payments more affordable. Servicers receive $1,000.00 for each HAMP modification and an additional $500 for modification of yet to be delinquent loans which were in clear danger of imminent default.

23.    The industry entities that perform the actual interface with borrowers including such tasks as payment processing, escrow maintenance, loss mitigation and foreclosure are known as "servicers." Servicers typically act as the agents of the entities that hold mortgage

loans. SunTrust Mortgage, Inc. is a servicer operated by SunTrust Bank, Inc., and its actions described herein were made as agents for the entities that hold mortgage loans.

24.     To participate in HAMP, a servicer must execute a Servicer Participation Agreement ("SPA") with the federal government.

25.     In 2009, SunTrust executed an SPA, thereby making SunTrust a participating servicer in HAMP.

26.     The SPA executed by SunTrust incorporates all "guidelines," procedures, and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" issued by the Treasury, Fannie Mae or Freddie Mac, in connection with the duties of Participating Servicers.

27.     The SPA mandates that a Participating Servicer "shall perform" the activities described in the Program Documentation "for all mortgage loans it services."

28.     The Program Documentation requires Participating Servicers to evaluate all loans that are 60 or more days delinquent for HAMP modifications. In addition, if a borrower contacts a Participating Servicer regarding a HAMP modification, the Participating Servicer must collect income and hardship information to determine if HAMP is appropriate for the borrower.

*TPP Agreements*

29.     A HAMP Modification consists of two stages. First, a Participating Servicer is required to gather a borrower's financial and other relevant information and, if the borrower qualifies, offer the borrower a TPP Agreement. SunTrust's form TPP Agreements require borrowers to make certain representations, provide relevant information, and make three consecutive trial period payments at a revised rate designed to keep the borrower in his or her home.

30.     SunTrust's TPP Agreements provide that SunTrust will extend offers for permanent modification to those homeowners who execute the TPP Agreement and fulfill the documentation and payment requirements. Hence, if a homeowner executes the TPP Agreement, complies with all documentation and representation requirements, and makes all TPP monthly payments, the second stage of the HAMP process is triggered in which the homeowner is offered a permanent loan modification.

***SunTrust's Scheme to Impose Improper Fees During the Modification Trial Period***

31.     Plaintiffs and members of the proposed Classes entered into trial modification periods with SunTrust only to find that SunTrust refused to make a timely decision on the modifications, instead stringing borrowers along for many additional months without a decision – all the while imposing hefty penalty fees and, in many cases, ultimately commencing foreclosure proceedings.

32.     When SunTrust mortgagors enter into the "trial period" portion of the loan modification process, they are directed by SunTrust to make payments for a designated period of consecutive months at a reduced (modified) rate, ostensibly to qualify for permanent modification. After consumers *follow* those directions during the trial period, however, SunTrust imposes substantial (but baseless) penalty fees and late fees, and then commences foreclosure proceedings against consumers.

33.     SunTrust's goal appears to be to keep loans in default and arrears for as long as possible before ultimately foreclosing or selling the servicing rights to another mortgage servicer. This is precisely what SunTrust accomplishes by inviting borrowers to participate in HAMP (or other modification programs) and then encouraging them to continue making

temporary payments when SunTrust has no intention to comply with HAMP requirements and/or offer permanent modifications, as Plaintiffs' and the Classes' experiences exemplify.

34.     Meanwhile, SunTrust profits from initiating and actively pursuing foreclosure while simultaneously collecting payments from mortgagors pursuant to illusory promises of forbearance, permanent modifications, or "workout" solutions.

***Facts Pertaining to Plaintiffs' Experience***

35.     David and Laurie Wilson purchased their home in 2008.[2] The Wilsons' mortgage was and continues to be held and serviced by SunTrust.

36.     In or about August 2009, Laurie contacted SunTrust to inquire about modifying the Wilsons' mortgage payment. A SunTrust representative informed Laurie that the Wilsons did not qualify for the HAMP mortgage modification until they missed a payment. The SunTrust representative instructed Laurie to skip the next mortgage payment and to call SunTrust about modification thereafter.

37.     As instructed, the Wilsons did not pay their mortgage in September 2009. A month later, the Wilsons received a notice of foreclosure from SunTrust. Laurie contacted SunTrust immediately after receiving the notice and paid the full amount of the skipped payment.

38.     At that time, SunTrust informed the Wilsons that they now qualified for a HAMP modification, and should submit the paperwork required to enter into the TPP. The Wilsons submitted their paperwork in September 2009 and began the trial period shortly thereafter.

39.     Although SunTrust originally told the Wilsons that their trial period would last two to three months, the Wilsons' trial period lasted thirteen months.

---

[2] The deed to the Wilsons' home is in Laurie Wilson's name only.

40.     During the entire year-long trial period, the Wilsons paid their reduced mortgage payments every month on time, using SurePay – SunTrust's own auto-debit program.

41.     Despite the Wilsons' timely payments, SunTrust reported the Wilsons to the major credit bureaus as being late on every payment for the entirety of the thirteen-month trial period. This had a significant, adverse effect on the Wilsons' credit score.

42.     SunTrust also charged the Wilsons penalties and interest as a result of these "late" payments.

43.     What is more, throughout the thirteen-month trial period, SunTrust has sent the Wilsons a number of foreclosure notices.

44.     At the end of the trial period, SunTrust did not reduce the Wilsons' payment or the interest owed on their mortgage. Instead, SunTrust only increased the pay-off term for the Wilsons' mortgage. While the Wilsons currently pay less for each mortgage payment than they did prior to the TPP, the reduction in payment is based solely on the fact that their real estate taxes have dropped since they purchased their home.

45.     Consumers throughout the country have had similar experiences as a result of SunTrust's modification practices and unlawful scheme.

46.     One consumer-oriented website details the following experiences of similarly situated consumers:

> * I am a victim of an act by SunTrust Mortgage. SunTrust Mortgage had put me on a trial Home Loan modification process starting Jan 2009. By the contract agreement signed the lender agreed to lock in the modified monthly amount through HAMP(Home Affordable Modification Program) once the paper work was done and all facts reported by myself were verified. There was no follow up or updates. I called in at least once a month to check on the status of the process and there was always no straight answer. The famous answer was "we are behind, just keep paying the trial amount and check back later". One year later in Jan 2011, SunTrust Mortgage sold the loan to NationStar Mortgage Company,

without disclosing or addressing the status of the Loan Modification contract. NationStar is demanding to collect all short payments trough out past year and accelerating the house to go into fore closure. I don't even believe SunTrust applied for HAMP on my loan as they were supposed to per contract; at least there is no evidence. Now my credit is a mess and I'm losing my house.

Reza of San Jose, CA [posted on 5/13/11]

- My story is like a carbon copy of the ones ones below. . . . I was told not to make the payments and then I would qualify for a loan modification and the missed payments would disappear from my credit report when the modification went through. I was up to date on the payments until then. I did as I was told and it has been a nightmare ever since.

  I have received duplicate, outdated paperwork repeatedly. I have never received an account statement and when I asked about it, I was told not to worry about it, "just keep paying the $XXXX. at the SunTrust Bank." I have been doing so since the loan modification was started in June 2009. I have never received anything about amount changes or tax payments or anything like that from the mortgage company. Sept. 2009 I got papers saying my modification was complete. Nothing else until Dec. of 2010 when I received an account statement that said I owed SunTrust $6000!

  ....

  Finally they mailed me a letter stating the total amount which included lawyers fees!!!!!

  Bobbie of Ocala, FL [posted on 3/4/11]

- My story is much the same as those below. Tried to refinance my mortgage 2 years ago. Essentially I wanted to extend the remaining term from 7 years to 15 to reduce payments. Was told to go into a remodication program and started a 3 month trial program in Jan 2010. I was told if we made these three monthly payments on time, the new mortage agreement would be in affect.

  Now, a year later, still doing the trial payments and can't get any resolution. I have been asked to resend information countless times. I call almost every week and get a different story every time. My credit rating has been trashed down to 450 because SunTrust reports to the credit agencies I haven't paid my mortgage in a year despite having made all the trial payments properly.

  I am now getting served with forclosure notices and statements are showing I owe $14K in back payments (the difference between the old

payments and the trial payments). I am getting hit with over $100/mo in late payment charges.

It is impossible to get hold of anyone at SunTrust other than the call center. And they just kick the can down the road with another story, or request the same information over and over again.

Welcome to 2 years of absolute hell.

I can't believe they can continue to get away with this. I am totally frustrated and feel like there is no where to turn.

Raabe of Cherry Hill, NJ [posted on 2/21/11][3]

## V.    CLASS ACTION ALLEGATIONS

47.    Plaintiffs bring Counts I-II, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

All consumers in the United States and its territories whose home mortgage loans are or were serviced by SunTrust and who have made payments pursuant to a HAMP Trial Period Plan or any similar temporary modification agreement offered by SunTrust (the "Class").

Excluded from the Class are SunTrust and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

48.    Plaintiffs bring Count III-V, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

All consumers whose home mortgage loans are or were serviced by SunTrust, who have made timely payments pursuant to a HAMP Trial Period Plan or any similar temporary modification agreement offered by SunTrust, and SunTrust reported as "late" to credit bureaus (the "Reporting Class").

---

[3] All errors in original. *See* http://www.consumeraffairs.com/finance /suntrust_mortgage.html; last accessed Aug. 30, 2011.

Excluded from the Reporting Class are SunTrust and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Reporting Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

49.     The Class and the Reporting Class are collectively referred to as the "Classes" below unless otherwise specified.

50.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all members of the Classes is impracticable. On information and belief, there are thousands of consumers who have been damaged by SunTrust's wrongful conduct as alleged herein. The precise number of members of the Classes and their addresses are presently unknown to Plaintiffs but may be ascertained from SunTrust's books and records. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

52.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

a.     whether SunTrust engaged in the conduct as alleged herein;

b.     whether SunTrust has been unjustly enriched as a result of the conduct complained of herein;

c.     whether SunTrust engaged in unfair or deceptive acts or practices and/or unfair methods of competition in trade or commerce in violation of applicable laws;

d.　　whether Plaintiffs and the other members of the Classes are entitled to actual, statutory, or other forms of damages, and other monetary relief and, if so, in what amount(s); and

e.　　whether Plaintiffs and the other members of the Classes are entitled to equitable relief, including but not limited to injunctive relief and restitution.

53.　　**Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other members of the Classes' claims because, among other things, all members of the Classes were comparably injured through the uniform misconduct described above and were subject to SunTrust' deceptive and misleading conduct.

54.　　**Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of their respective Classes because their interests do not conflict with the interests of the other members of the Classes they seeks to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The members of the Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

55.　　**Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** SunTrust has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to members of the Classes as a whole.

56.　　**Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against SunTrust, so it would be impracticable for members of

the Classes to individually seek redress for SunTrust's wrongful conduct. Even if members of the Classes could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and it provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.  CLAIMS ALLEGED

### A. *THE CLASS CLAIMS*

### COUNT I
**Breach of Contract (HAMP Trial Period Plan Agreement)**
**(On behalf of the Class)**

57.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1-56 of this Complaint as though fully set forth herein.

58.     The TPP Contract is a valid and enforceable contract.

59.     Plaintiffs and the other Class members were required to provide documentation of their current income, make legal representations about their personal circumstances, and agree to other conditions and requirements in connection with the TPP Contract. In so doing, they suffered a "legal detriment" constituting adequate consideration.

60.     Plaintiffs and the other Class members performed all conditions precedent to the TPP Contract.

61.     SunTrust breached the TPP Contract by attempting to foreclose on Plaintiffs' homes, and imposing other late fees and penalties, while the TPP was in effect, and despite that Plaintiffs had complied with the TPP Contract.

62.    Furthermore, SunTrust never notified Plaintiffs that their application for permanent modification had been denied.

63.    Plaintiffs have incurred damages and other injury as a result of SunTrust's breach.

**COUNT II**
**Unjust Enrichment**
**(In the alternative to Count I)**
**(On behalf of the Class)**

64.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-56 of this Complaint as though fully set forth herein.

65.    SunTrust has received a benefit from Plaintiffs and the other Class members, to which it was not entitled, in the form of the late fees and other penalties that it assessed and collected from Plaintiffs and the other Class members, through its wrongful conduct, as alleged above, as well as those Class members' properties that it foreclosed on and took possession of.

66.    SunTrust has knowingly appreciated and accepted this benefit which has resulted and continues to result in an inequity to Plaintiffs and the other Class members.

67.    SunTrust's appreciation and acceptance of this benefit is inequitable.

68.    As a result of SunTrust's unjust enrichment, Plaintiffs and the other Class members sustained damages in an amount to be determined at trial. Plaintiffs and the other Class members seek full disgorgement and restitution of SunTrust's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## B. *THE REPORTING CLASS CLAIMS*

### COUNT III
### Violation of the Truth in Lending Act
### 15 U.S.C. § 1639f
### (On behalf of the Reporting Class)

69.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1-56 of this Complaint as though fully set forth herein.

70.     At all times relevant hereto, there was in effect a federal statute known as the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA").

71.     SunTrust was at all relevant times a "servicer" as defined by TILA.

72.     Section 1639f(a) of TILA states:

In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency. . . .

15 U.S.C.A. § 1639f(a).

73.     SunTrust violated and continues to violate section 1639f by failing to credit payments made to a consumer's mortgage account on the date of payment. Despite that consumers make their mortgage payments on time, SunTrust reports consumers as late to the credit bureaus.

74.     As a result of SunTrust's conduct, Plaintiffs and the other members of the Reporting Class have sustained damages in an amount to be determined at trial.

### COUNT IV
### Breach of Contract (HAMP Trial Period Plan Agreement)
### (On behalf of the Reporting Class)

75.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1-56 of this Complaint as though fully set forth herein.

76.     The TPP Contract is a valid and enforceable contract.

77.     Plaintiffs and the other members of the Reporting Class were required to provide documentation of their current income, make legal representations about their personal circumstances, and agree to other conditions and requirements in connection with the TPP Contract. In so doing, they suffered a "legal detriment" constituting adequate consideration.

78.     Plaintiffs and the other members of the Reporting Class performed all conditions precedent to the TPP Contract.

79.     SunTrust breached the TPP Contract by failing to credit Plaintiffs' and other Reporting Class members' accounts for payments they made pursuant to the TPP, imposing other late fees and penalties while the TPP was in effect, despite that Plaintiffs and the other Reporting Class members had complied with the TPP Contract.

80.     Plaintiffs and the other members of the Reporting Class have incurred damages and other injury as a result of SunTrust's breach.

**COUNT V**
**Unjust Enrichment**
**(In the alternative to Count V)**
**(On behalf of the Reporting Class)**

81.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1-56 of this Complaint as though fully set forth herein.

82.     SunTrust has received a benefit from Plaintiffs and the other Reporting Class members, to which it was not entitled, in the form of the late fees and other penalties that it assessed and collected from Plaintiffs and the other Reporting Class members, through its wrongful conduct, as alleged above.

83.     SunTrust has knowingly appreciated and accepted this benefit which has resulted and continues to result in an inequity to Plaintiffs and the other Reporting Class members.

84.     SunTrust's appreciation and acceptance of this benefit is inequitable.

85.     As a result of SunTrust's unjust enrichment, Plaintiffs and the other Reporting

Class members sustained damages in an amount to be determined at trial. Plaintiffs and the other

Reporting Class members seek full disgorgement and restitution of SunTrust's enrichment,

benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged

herein.

## VII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all

claims in this Complaint so triable.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes

proposed in this Complaint, respectfully requests that the Court enter an Order awarding the

following relief:

A.     Declaring that this action is a proper class action nationwide, and certifying the Classes as requested herein;

B.     Restitution and disgorgement of SunTrust's revenues to Plaintiffs and the other members of the Classes generated from the unlawful practices as set forth herein;

C.     Enjoining SunTrust from continuing the unlawful practices as set forth herein, directing SunTrust to engage in corrective measures, and directing SunTrust to identify, with Court supervision, victims of its conduct and pay them restitution;

D.     An order awarding actual damages (including punitive damages) as allowable by law;

E.     An Order awarding statutory damages to Plaintiffs Wilson and the other members of the Reporting Class, as provided by the Truth in Lending Act;

F.     An Order awarding attorneys' fees and costs to Plaintiffs and the other members of the Classes;

G.     Such other and further relief as may be just and proper.

Dated:  September 11, 2013

Respectfully submitted,

LAURIE WILSON and DAVID WILSON,
individually and on behalf of all others
similarly situated

By:  _____
                    Counsel

Wyatt B. Durrette, Jr. (VSB No. 04719)
*wdurrette@durrettecrump.com*
S. Sadiq Gill (VSB No. 30835)
*sgill@durrettecrump.com*
**DURRETTECRUMP, PLC**
Bank of America Center, 16th Floor
1111 East Main Street
Richmond, VA 23219
804.775.6900
Fax: 804.775.6911

Joseph J. Siprut*
*jsiprut@siprut.com*
Gregg M. Barbakoff*
*gbarbakoff@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.470.6588

*\*Pro Hac Vice* application to be submitted