IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LAURIE WILSON AND DAVID WILSON,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

v.                                                         Civil Case No. 3:13cv622
SUNTRUST MORTGAGE, INC. and
SUNTRUST BANKS, INC.,

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the defendants' motion to dismiss the plaintiff's complaint. (Dk. No. 7.) The plaintiff, Laurie Wilson,[1] on behalf of a nationwide class, alleges that the defendants, SunTrust Mortgage, Inc. and SunTrust Banks, Inc. entered into a contract—a temporary Home Affordable Modification Program ("HAMP") agreement—with the plaintiff and then breached the terms of the agreement by reporting her as delinquent to credit bureaus, charging her penalties and interest for "late" payments, and continuing to send her foreclosure notices. The Court DENIES the motion to dismiss because the Court finds that the plaintiff has sufficiently alleged breach of contract and unjust enrichment claims against the defendants.

### I. Facts

The federal government designed HAMP to keep homeowners struggling to pay their mortgages in their homes by reducing their monthly payments. The federal government

---

[1] The plaintiff voluntarily agrees to dismiss David Wilson (Laurie Wilson's husband) from the case for lack of standing. Accordingly, the Court DISMISSES David Wilson as a plaintiff.

provided financial incentives to loan servicers, such as SunTrust Mortgage, if they allowed borrowers to adjust their home mortgages through HAMP.

A HAMP modification consists of two stages. First, the loan servicer gathers a borrower's financial and other relevant information and, if the borrower qualifies, SunTrust Mortgage sends the borrower a Home Affordable Modification Trial Period Plan ("TPP Agreement"). SunTrust's TPP Agreements require borrowers to make certain representations, provide relevant information, and make three consecutive trial period payments. SunTrust's TPP Agreements provide that SunTrust will extend offers for permanent modification to those homeowners who execute the TPP Agreement and fulfill the documentation and payment requirements. Hence, if a homeowner executes the TPP Agreement, complies with all documentation and representation requirements, and makes all TPP monthly payments, the second stage of the HAMP process begins, and SunTrust offers a permanent loan modification to the homeowner.

SunTrust Mortgage services Wilson's home loan. Wilson contacted SunTrust Mortgage in February 2010[2] to ask whether she might be eligible for a HAMP loan modification. The SunTrust Mortgage representative told Wilson that she would not qualify for a HAMP modification until she missed a loan payment. The representative instructed her to miss her next payment and then to call SunTrust thereafter to inquire about her eligibility. As instructed, Wilson skipped her February 2010 payment. A month later, she received a notice of foreclosure from SunTrust Mortgage. Wilson then called SunTrust Mortgage and paid the full amount of the missed payment.

---

[2] Wilson alleges a different date in her complaint. Wilson alleges that the date in the complaint is the result of a scrivener's error. She asks for leave from the Court to file an amended complaint to correct the error. The Court DIRECTS Wilson to file an amended complaint with the correct date. The Court uses the correct date in deciding the instant motion.

At the same time, SunTrust Mortgage informed Wilson that she qualified for a HAMP modification and that she should submit the required financial information to SunTrust Mortgage. SunTrust Mortgage thereafter sent her the TPP Agreement with a start date of March 2010. The TPP Agreement required that Wilson provide documentation of all income she received, swear under penalty of perjury that she had provided truthful financial information, be willing to obtain credit counseling if SunTrust Mortgage asked her to do so, and make three trial period payments of $2,170.20 on or before March 1, 2010, April 1, 2010, and May 1, 2010.

The TPP contained the following relevant provisions:

- "This Plan will not take effect unless and until both the Lender and [Wilson] sign it and [the] Lender provides [Wilson] with a copy of this Plan with the Lender's signature." (Dk. No. 8-1 at 1.)

- "[T]he Lender will suspend any scheduled foreclosure sale, provided [Wilson] continue[s] to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates." (Dk. No. 8-1 at 2.)

- "The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay [Wilson's] oldest delinquent monthly payment . . . in full." (Dk. No. 8-1 at 2.)

- "[A]ll terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents." (Dk. No. 8-1 at 4.)

- "If prior to the Modification Effective Date, (i) the Lender does not provide [Wilson] with a fully executed copy of this Plan and the Modification Agreement; (ii) [Wilson] ha[s] not made the Trial Period payments required under Section 2 of this Plan; (iii) the Lender determines that any of [Wilson's] representations in Section 1 were not true and correct as of the date [Wilson] signed this Plan or are no longer true and correct at any time during the Trial Period; or (iv) [Wilson] [did] not provide all information and documentation required by [the] Lender, the Loan Documents will not be modified and this Plan will terminate." (Dk. No. 8-1 at 3.)

Wilson signed the TPP Agreement and mailed it back to SunTrust Mortgage on February 13, 2010. SunTrust Mortgage never sent Wilson a signed copy of the TPP Agreement. SunTrust Mortgage did, however, begin to deduct the reduced monthly payments from Wilson's bank account starting in March 2010. SunTrust Mortgage continued to deduct the TPP-adjusted payments from Wilson's account for the next thirteen months. During this thirteen-month period, SunTrust Mortgage (1) reported her to the major credit bureaus as making delinquent payments, (2) charged Wilson penalties and interest as a result of the "late" payments, and (3) sent Wilson a number of foreclosure notices. Around April 2011, SunTrust denied Wilson a permanent HAMP loan modification.

Wilson asserts two claims against the defendants: (1) breach of contract and, in the alternative, (2) unjust enrichment.[3] Wilson brings her complaint on behalf of two classes: (1) the Class and (2) the Reporting Class. Wilson alleges two identical breach of contract and unjust enrichment claims—one on behalf of the Class (Counts I and II) and the other on behalf of the

---

[3] Wilson, in her complaint, alleges an additional count: Count III—a violation of the Truth and Lending Act. Wilson agrees to voluntarily dismiss this count. Accordingly, the Court DISMISSES Count III.

Reporting Class (Counts IV and V). Wilson's breach of contract claim stems from alleged breaches of the TPP Agreement. She makes it clear in her complaint that she is not bringing this claim against SunTrust Mortgage for denying her a permanent HAMP loan modification.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief, that is, the "plausibility of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). Although the Court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

### III. Discussion

#### A. Breach of Contract
(Counts I and IV)

For a breach of contract claim to survive a motion to dismiss, the plaintiff must allege: "(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) injury or damage to the plaintiff caused by the breach of [the] obligation." *Nash v. Green Tree Servicing, LLC*, 943 F. Supp. 2d 640, 646 (E.D. Va. 2013).

Wilson sufficiently alleges that a legally enforceable obligation exists by alleging the existence of an offer, an acceptance, and adequate consideration. First, as to the existence of an offer and acceptance, the terms of the TPP Agreement provide that for an enforceable contract to form between the parties SunTrust had to sign and return a copy of the TPP Agreement to Wilson. This never happened. Nonetheless, the Court finds that Wilson sufficiently alleges the existence of a contract. Wilson made an offer to SunTrust Mortgage when she signed the TPP Agreement and mailed it to SunTrust. SunTrust Mortgage then accepted that offer when it began auto-deducting the TPP-adjusted amount from Wilson's bank account. Although SunTrust never signed and sent a copy of the TPP Agreement back to Wilson, Wilson nonetheless properly relied on SunTrust's performance once SunTrust began deducting the reduced payments from her account. *See Nash*, 943 F. Supp. 2d at 646.

Second, the Court finds that Wilson alleges adequate consideration. Wilson alleges that, in addition to the TPP-adjusted payments, she had to provide documentation of all of the income she received, swear under penalty of perjury that she had provided truthful financial information, and be willing to obtain credit counseling if SunTrust Mortgage asked her to do so. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 564 (7th Cir. 2012); *Allen v. CitiMortgage, Inc.*, Civ. No.

CCB-10-2740, 2011 WL 3425665, at *6 (D. Md. Aug. 4, 2011); *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 352 (D. Mass. 2011).

Third, Wilson adequately alleges a breach of the contract by SunTrust Mortgage: (1) by sending Wilson foreclosure notices, (2) by assessing her with late fees even though she paid the full amount owed under the TPP each month, and (3) by failing to credit her account. *See Fletcher v. OneWest Bank, FSB*, 798 F. Supp. 2d 925, 932 (N.D. Ill. 2011).

Finally, Wilson adequately alleges damages. She alleges that she suffered injuries from the late fees, penalties, and the damage done to her credit score.

The applicable statute of limitations for unwritten contracts bars Wilson, however, from recovering for breaches of the TPP Agreement that occurred before September 11, 2010. In a diversity action, federal courts apply the choice of law rules of the forum state. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "Under well-established Virginia choice-of-law rules, the nature, validity, and interpretation of a contract is governed by 'the law of the place where made.'" *Hunter Innovations Co. v. Travelers Indem. Co. of Conn.*, 753 F. Supp. 2d 597, 602 (E.D. Va. 2010) (quoting *Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 469 S.E.2d 61, 63 (1996). Further, in Virginia, "a contract is 'made' at the place 'where the final act is done which is necessary to make the contract binding.'" *Id.* (quoting *Chesapeake Supply & Equip. Co. v. J.I. Case Co.*, 700 F. Supp. 1415, 1417 (E.D. Va. 1988)). As discussed above, SunTrust Mortgage's acceptance—the final act to form the contract—occurred when SunTrust Mortgage automatically deducted the TPP-adjusted payment from Wilson's bank account. SunTrust Mortgage operates out of Virginia; this last act, therefore, occurred in Virginia.

A five-year statute of limitations applies to written contracts in Virginia. Va. Code Ann. § 8.01-246(2). The Supreme Court of Virginia has recently stated, however, that a party's failure

to sign and return a contract, as contemplated by the terms of an agreement, resulted in the formation of an unwritten contract rather than a written contract. *Gerald T. Dixon, Jr., L.L.C. v. Hassell & Folkes, P.C.*, 283 Va. 456, 460–61, 723 S.E.2d 383, 384–85 (2012). An unwritten contract is only subject to a three-year statute of limitations. Va. Code Ann. § 8.01-246(4).

Wilson complied with the terms of the TPP Agreement by making monthly installment payments. SunTrust Mortgage then breached the TPP Agreement each month by sending her foreclosure notices, assessing her late fees, and failing to credit her account. Because of the applicable three-year statute of limitations, however, Wilson can only bring a claim against SunTrust Mortgage for breaches that occurred on or after September 11, 2010. The applicable statute of limitations bars anything before this date.

### B. Unjust Enrichment
(Counts II and V)

To succeed on an unjust enrichment claim Wilson must allege facts showing: (1) that Wilson conferred a benefit on SunTrust Mortgage, (2) that SunTrust Mortgage knew of the benefit and should have expected to repay Wilson, and (3) that SunTrust Mortgage accepted or retained the benefit without paying for its value. *Schmidt v. Household Fin. Corp.*, 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008); *Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994). Wilson sufficiently alleges these elements in her complaint, and the Court will allow her to proceed with this claim as an alternative claim to her breach of contract claim.

Similar to the breach of contract claim, the statute of limitations bars Wilson from recovering for any unjust enrichment that occurred prior to September 11, 2010. A plaintiff must bring a claim for unjust enrichment within three years from the accrual of the cause of action. Va. Code Ann. § 8.01-246(4). A cause of action for unjust enrichment accrues when the unjust

enrichment occurs, not when the plaintiff discovers it. *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004). Wilson alleges, similar to her breach of contract claim, that her unjust enrichment claim arises from a series of installment payments (a monthly TPP-adjusted payment). Accordingly, SunTrust Mortgage was unjustly enriched each month it assessed Wilson late fees and penalties. Thus, the three-year statute of limitations bars Wilson's unjust enrichment claims prior to September 11, 2010.

## IV. Conclusion

For the reasons stated above, the Court DENIES the defendants' motion to dismiss. The Court will enter an appropriate order.

Let the Clerk send a copy to all counsel of record.

Date: <u>March 12, 2014</u>
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge